IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,          )
                                   )
                                   )
                Plaintiff,         )
v.                                 )
                                   )
                                   )
                                   )
RICHARD A. HAGAN                   )
                                   )          No. 07-10180-01 WEB
                Defendant          )
                                   )
_____)


## Memorandum and Order

The matter is before the court for review of CJA payment vouchers submitted by attorney Roger Falk, who represented Defendant Richard Hagan.  On April 14th, 2010, this Court issued a Memorandum and Order (Doc. 374) with proposed reductions in Mr. Falk's submitted vouchers.  The Court granted Mr. Falk 10 days from the date of the order to file a response.  Mr. Falk filed his response (Doc. 377) on April 27, 2010.  In the email accompanying Mr. Falk's response, Mr. Falk stated that he felt the response adequately covered his position and did not feel a hearing was necessary.  Therefore, the Court has reviewed Mr. Falk's response and is prepared to make a final ruling.

## Discussion

It must be noted that appointments under the Criminal Justice Act are essentially public service appointments, and while the Court wants to ensure that attorneys are

compensated for their time, the charges must not be excessive. After a complete review of all of the vouchers submitted in this case and Mr. Falk's response, the Court finds that Mr. Falk's billings are excessive. However, the Court has not reached whether the excessive nature of Mr. Falk's charges goes beyond carelessness at this time.

Counsel appointed under the CJA may be compensated for time "reasonably expended" and expenses "reasonably incurred." 18 U.S.C. §3006A(d)(1). The presumptive maximums <u>may</u> be exceeded if the representation provided was "extended or complex" <u>and</u> there is a judicial certification that excess payment is necessary to afford fair compensation.

The "district court... shall fix the compensation and reimbursement to be paid." 18 U.S.C. 3006A(d)(5). This Court, "as the body empowered to 'fix' CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time." *U.S. v. Moreira,* 2009 WL 362095, 1 (S.D. Fla. 2009).

Although the case at hand was designated as complex, the Court is not required to approve all vouchers regardless of the amount. The total fee must be reasonable. In this case, two of the three appointed attorneys billed a total of 122.6 and 122.9 hours respectively. The Mr. Falk has billed a total of 1056.1 hours.

"The following criteria, among others, may be useful in this regard: responsibilities involved measured by the magnitude and importance of the case; manner

in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee." *Guidelines for the Administration of the Criminal Justice Act* (hereinafter "CJA Guidelines"), Volume VII, *Guide to Judiciary Policies and Procedures,* §230.23.40(c).

After a review of Mr. Falk's escalating monthly bills in this case, the Court contacted the attorney on November 5, 2009 and requested more detailed billings for the previous months. On November 16, 2009, the attorney provided one year of detailed inter-office billings to the Court in an attachment to an e-mail. The email stated in pertinent part:

> Per your request, please find attached the billings generated by our office for the last year in the Hagan matter. They cover October 21, 2008, through October 20, 2009. We only have the last year available at this time, as we do not keep any billings once they get to be a year old, or older, at the office. After that time they are moved to our dead file storage, which is off-site.
>
> Upon my review of the billings I noted that the bookkeeper had entered some of J. Matthew Leavitt's (JML or MJL) time and some of Casey J. Cotton's (CJC) time as my time, or "RLF." I have corrected this on these billings to properly reflect who did the work.
>
> ....
>
> J. Matthew Leavitt is a recent Graduate of KU, and during his last year at KU he also worked for us as a legal intern. He did

not have a temporary practice permit. He graduated from KU in
May of 2009, and has been employed by us full time ever since
that date...

That same day, the Court requested detailed statements for the prior

year–beginning with the date of the appointment in this case, October 10, 2007.  Three

months later, in February 2010, the Court received these statements.

Upon review of the applicable guideline provisions and the submitted vouchers

and inter-office billings by the three appointed attorneys in this case, the Court finds that

a fair and reasonable fee necessary to provide fair compensation to Mr. Falk in this case is

no more than 250 hours.  The Court has arrived at this conclusion after a thorough review

of all of the available information regarding the case.

First, Mr. Schoenhofer and Ms. Schmidt's vouchers billed a total of 122.6 and

122.9 hours respectively for their clients in this case.   Given the similar nature of the

defendants, the fact that they all plead guilty prior to trial, and their involvement in the

same scheme, the Court finds that a comparison between the number of hours billed is

helpful, but not solely determinate, in evaluating the number of hours reasonably

necessary to provide representation.   The Court has given individual consideration to Mr.

Falk and his client's specific needs in this case.

The Court has also considered that Mr. Falk requested and the Court approved an

expert to assist him in the interviewing of witnesses in preparation for trial.  Neither of

the other appointed attorneys received similar assistance.  Such assistance was granted to

reduce the number of hours Mr. Falk would have to spend on the case and those hours are not included in the following calculations. Mr. Falk's expert was paid separately and the expert's hours are not a factor in the following analysis.

The Court recognizes that Mr. Falk's client was more of a prominent player in the scheme alleged in the Indictment than the other two appointed attorneys' clients. However, the Court must note that while the Indictment was lengthy and contained numerous counts, it was the same scheme that was perpetrated against various victims. The Indictment, although long, was repetitious. Nevertheless, Mr. Falk billed 16.1 hours to read, review, and take notes on the Indictment.

Approving a total of 250 hours for Mr. Falk's services in this case will adequately compensate him for the services he provided and is more than double what either of the other appointed attorneys received. In accordance with this conclusion, the Court is cutting the hours billed back to a reasonable fee.

Mr. Falk's response conceded that he should not have billed for Mr. Cotton's time or secretarial tasks. Therefore, the Court will not address those categories further.

**Unlicensed Intern**

The above email was the first notice the Court received that some of the billed time was performed by an unlicenced intern. Mr. Falk does not contest this fact in his response.

The vouchers previously paid were submitted under the name of the appointed attorney, Roger Falk, with his signature at the bottom. This Court will not permit an

unlicenced intern, without a temporary license to practice law, to bill at the attorney rate under another attorney's name. To allow such would be similar to condoning the unauthorized practice of law–at the government's expense.

Mr. Falk's response "readily admits that he attempted to make use of Mr. Leavitt's availability to assist in the preparation of this case for trial. Counsel did have other cases in the office, and approximately 46.83% of the hours billed in this case are for Mr. Leavitt's time, not [Mr. Falk's]." Doc. 377, p.7. Mr. Falk states that he was "unaware that he could not bill for...Mr. Leavitt's time in this case." *Id.* at 8.

The Court finds it improbable that a licensed attorney with Mr. Falk's experience could reasonably believe that it would be acceptable to bill the government for an unlicenced intern's time at the attorney rate under the appointed attorney's name.

The purpose of authorizing assistance of paralegals and legal assistants is to promote "greater efficiency and lower costs for the CJA program..." CJA Guidelines, § 320.70.50. In this case, counsel billed the intern at the attorney rate under Mr. Falk's name. Additionally, the hours far exceed what is reasonably necessary to represent Mr. Falk's client, and it does not appear that those hours served to promote greater efficiency because Mr. Falk billed over eight times the amount of hours the other two appointed attorneys in the case billed. The Court therefore finds that Mr. Falk is not entitled to payment for any of those 494.6 hours.

**Legal Research and Writing**

Throughout the course of the case, Mr. Falk has billed a total of 100 hours for

Legal Research and Brief Writing. While many motions were filed in this case, Mr. Falk only filed two motions: Motion to Appoint an Expert (Doc. 243) and Motion to Continue Sentencing (Doc. 302). Mr. Falk did, however, sign onto two other joint motions: Motion to Strike Surplusage (Doc. 200) and Joint Motion to Exclude Indictment from the Jury Room (Doc. 202)--which were submitted by four attorneys in the case and were under fifteen pages combined.

Even when considering the two joint motions, this Court cannot conclude that 100 hours is a reasonable fee for the legal research and brief writing performed by Mr. Falk in this case. The Court finds that 50 hours is reasonable and sufficient for the legal research and writing Mr. Falk was required to perform in this case. Therefore, Mr. Falk is not entitled to compensation for the remaining 50 hours that he billed in this category.

**Obtaining and Reviewing Records**

Over the duration of this case, Mr. Falk has billed a total of 618.9 hours in the "Obtaining and reviewing records" category of the CJA Voucher Form. The majority of these entries are simply noted as "review discovery" or "work on discovery" and then note the number of hours. The Court finds that these notations are insufficient and lack the details necessary to justify this amount of time. To justify such extensive hours, counsel must provide the Court with a basis–namely detailed billings. "Review discovery" and "work on discovery" does not adequately justify to the Court why Mr. Falk is entitled to bill more than five times more than what each of the appointed attorneys billed in the entire case simply for review of discovery.

The Court is well aware of the extensive nature of the discovery in this case, the Court notes that the two other appointed attorneys navigated through very similar materials in a fraction of the time. Even after reviewing the inter-office billings provided by Mr. Falk at the Court's request, these records still only show blocks of hours of time without any details or particularity. None of the records show the need for hundreds of hours of reviewing discovery.

Counsel goes into great detail and analysis on how many pages per minute he would have to read to cover all of the discovery in the time allotted. Mr. Falk's response repeatedly states the voluminous nature of the discovery. The Court does not question this fact. But Mr. Falk's own response states that "much of the discovery [he] had been through to date had little to do with the government's allegations against Mr. Hagan, and [he] was not certain why all of it had been delivered..." Doc. 377, p. 8. Counsel is encouraged to use discretion as to what documents require an in depth analysis and which documents require a cursory scan. CJA attorneys are not entitled to bill the government when they fail to use their discretion between the two categories.

Yet, even if such a comprehensive review of all of the discovery in this case was warranted, counsel fails to support his billings with specific statements of what discovery was reviewed during which time period. "[C]ounsel shall submit with the voucher a detailed memorandum supporting and justifying counsel's claim that the representation given was in an extended or complex case, *and* that the excess payment is necessary to provide fair compensation." CJA Guidelines, Paragraph 2.22C(2). If counsel had made

any notations, in the inter-office billings, the vouchers, or in his response to the Court's proposed order, which could assure the Court that these entries were necessary, reasonable, and expeditiously performed by counsel, the result may have been different.

However, without detailed billings to hold counsel accountable for the time spent "reviewing discovery," the Court cannot in good conscience find that 618.9 hours was reasonably necessary to provide adequate compensation to Mr. Falk. The non-descriptive time entries are numerous, most entries are multiple hours on end, and even after requesting and reviewing more detailed statements, the Court can see no way to ensure that these tasks were not merely duplicate entries. Based on a review of all of the vouchers, records, and inter-office billings, it appears that 333.6 hours of that time was performed by an unlicensed intern. That leaves 285.3 hours that were spent by Mr. Falk himself. The Court finds this to be excessive and unjustified by the billings submitted. Mr. Falk's response does not provide any assurance that these entries were not duplicates and simply relies on the volume of discovery. This Court holds that 121.8 hours of that time is billable. Mr. Falk is not entitled to compensation for the remaining 163.5 hours in this category.

The Court therefore finds that 163.5 hours should be cut from the Obtaining and Reviewing Records category.

## Sentencing Pursuant to 11(c)(1)(C)

Mr. Falk's client plead guilty pursuant to an 11(c)(1)(C) plea agreement. Such a plea agreement proposes a sentence, which if accepted by the District Judge, is binding

upon the parties. In this case, the plea was accepted and the proposed sentence was imposed. Nevertheless, Mr. Falk billed a total of 38.1 hours after the date of the plea in preparation for the sentencing.

This Court finds that a maximum of 10 hours is sufficient to prepare for this sentencing pursuant to an 11(c)(1)(C) plea agreement. Therefore, the additional 28.1 hours will be deducted from Mr. Falk's compensation.

## Monthly Totals

This Court is well aware that the practice of law requires attorneys to work on numerous cases during the same time period. Therefore, the Court must note that some of Mr. Falk's billings are improbable and suspect. For example, from June 21, 2009 through July 22, 2009, Mr. Falk managed to bill a total of 147.7 hours in this case alone. The following month, he billed another 189.8 hours. This Court can take judicial notice of the fact that even if an attorney only worked on one case during an entire month and was productive enough to perform 8 <u>billable</u> hours each work day, that is a total of 160 hours. In this case, Mr. Falk billed nearly 30 hours over that allotment.

While the Court is not privy to know the caseload Mr. Falk carries in his private practice, it is well aware that Mr. Falk was appointed in other cases during the same time period as the instant case. In fact, as of the date of this order, Mr. Falk has yet to submit any vouchers on another case that has been resolved and is no longer pending: 07-10221-18-MLB. The Court is also aware of another case, 08-10106-02-JTM, which although Mr. Falk was retained, the Court recognizes that it required Mr. Falk's time. Both cases

overlap in duration with the case at hand. Even without taking those cases into account, one example of Mr. Falk's excessive billing is from December 21, 2007 through January 22, 2008, where the sum of Mr. Falk's hours in only his CJA appointment cases is over 233 hours.

The Court must note counsel is free to use support staff during their representation of clients pursuant to CJA appointments, but counsel is not entitled to bill their time at the attorney rate. Counsel asserts that he was in a "catch 22" because his client demanded him to "look up the law in every imaginable aspect of the case, and send[] copies of the case law, jury instructions, USC provisions, and USSG's to the client, alone with explanation of the same..." Doc. 377, p. 10. Counsel's staff should be capable of making these copies of the law identified by counsel, copies of jury instructions and mailing such documents to the client.

Counsel is also encouraged to use billing discretion and an editing eye with regard to what charges end up on the submitted vouchers. Mr. Falk states that he "has not reviewed the billing records." *Id.* at 8. He further states that he "is well aware that secretarial time should not have been billed to the government in this case. To that end, there is a BIG difference between what goes down on the inter-office billing sheets and what ends up on the vouchers. [His] billing clerk, and wife, Dee, is under strict directions not to bill for secretarial time on vouchers going to the government." *Id.* at 9.

Although Mr. Falk has not reviewed the billing records, the Court has taken an extensive review of these records, the inter-office billings, the hand-written corrections,

and the submitted vouchers. Mr. Falk's signature is on every submitted voucher. Mr. Falk should be well aware that when he signs the vouchers, he alone is responsible for their content.

Counsel's response repeatedly quotes this Court's proposed order which stated that certain monthly totals were "improbable and suspect." Mr. Falk has advised this Court that he had five complex cases pending in the United States District Court during the time of this case, in addition to the preparation of a capital murder case in Reno County District Court and a contempt matter on appeal to the Kansas Court of Appeals.[1] By Mr. Falk's own admission, the Court's assumption was correct–Mr. Falk did not spend the hours he billed working on this case. Instead, he hired an unlicensed intern, who ultimately performed "approximately 46.83% of the hours billed in this case." Doc.

_____

[1] In a Motion to File Notice of Appeal Out of Time in 06-10056-01 WEB, *U.S. v. Juan Espinoza,* Doc. 156, pp. 2-4, Mr. Falk advised the Court that he has the following cases pending and was unable to prepare the Notice of Appeal within the statutory period. *State v. Strand*, a Reno County District Court capital murder case which required briefing and oral arguments. *United States v. James E. Keller,* a complex case with eight counts charged and over 5,000 pages of discovery. *United States v. David E. Burkholder,* another complex case with over 40 victims of the alleged fraud, more than 5,000 pages of discovery, and more than $2.5 million dollars. *United States v. Hernandez,* a complex case with more than 20 defendants, over 2 ½ years of wiretaps. The Court notes that although Mr. Falk was appointed under the CJA in *Hernandez*, his client plead and was sentenced over 10 months ago, he has yet to submit any CJA vouchers. *United States v. Tisdale,* a triple homicide case, in which the government is seeking the death penalty. Mr. Falk withdrew in March of 2009 due to a conflict, but billed a total of 1,304.5 hours in *Tisdale* during the time the present case was pending. Counsel also noted that he represented Ms. Sarah Sweet McKinnon in a contempt matter in the District Court of Reno County during this time period. The case was a "very complex case" that was appealed to the Kansas Court of Appeals. "Due to the expedited nature of the case, counsel had to work on this case to the exclusion of some other matters during the time period at issue" which was March 23, 2009 through July 22, 2009–the exact time period which this Court labeled as improbable and suspect. *U.S. v. Espinoza,* 06-10056, Doc. 156, p. 4.

377, p. 7.  As noted above, the issue of whether this excessive billing goes beyond carelessness is not before the Court at this time.

**Conclusion**

After a review of all of the materials submitted to support Mr. Falk's billings, the Court finds that this degree of excess payment billed by Mr. Falk is not necessary to provide fair compensation in this case.  Counsel "respectfully request[s] that the Court review the *actual vouchers* which were submitted in the case" (*id.* at 12, emphasis added) while he admits that he has "not reviewed the billing records..." *Id.* at 8.  The Court has reviewed each and every voucher submitted in this case, compared the vouchers to the supplemental inter-office billings and all other statements submitted by counsel in this case.  The Court is well apprised of the situation and after a thorough review is prepared to make the following rulings and order.

While it is possible that Mr. Falk spent the entire 1,056.1 hours he has billed actually working on the case at hand, attorneys, particularly attorneys appointed under CJA, are encouraged to exercise billing discretion.  Although the Court commends Mr. Falk for his service to his client in this case, "[w]hat is commendable, however, is not necessarily compensable."  *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999).

Although Mr. Falk states that two retained counsel in this case billed more than he did, the Court must remind Mr. Falk that retained counsel and their clients can negotiate their own billing requirements.  As an attorney appointed under CJA, Mr. Falk is bound by the CJA Guidelines, and therefore, must support his billable hours with detailed

vouchers.  In the absence thereof, the Court has less to rely upon in making its determination of what is a "reasonable use of billable time."  *U.S. v. Moreira,* 2009 WL 362095, 1 (S.D. Fla. 2009).

The reasonable compensation for Mr. Falk in this case is 250 hours.  By comparing Mr. Falk and the other two appointed attorneys in this case, reviewing Mr. Falk's inter-office billings and noting their lack of specificity, and considering that Mr. Falk was the only one of the appointed attorneys to receive the outside assistance of a Court compensated expert (who was billed and paid independently from Mr. Falk) the Court finds that 250 hours of compensation is reasonable.

A review of the vouchers shows that approximately 15% of Mr. Falk's time was billed when the CJA hourly rate was $94, approximately 10% of his time was billed when the CJA hourly rate was $100, and the remaining 75% was billed when the CJA hourly rate was $110.  The Court finds that a total of $26,650, representing 250 hours of work by counsel at the appropriate hourly rates, constitutes the amount necessary to provide fair compensation to Mr. Falk for his services over the course of this case.

The Court has previously authorized payment for Mr. Falk in this case in the amount of $57,626.60, exclusive of costs and expert assistance.  Because of the errors revealed after-the-fact in Mr. Falk's billing practices, including but not limited to billing for an unlicenced intern, the amount of payment Mr. Falk is entitled to for his services in this case is less than the amount he has already been paid.   Therefore, Mr. Falk's vouchers pending approval in this case are denied.

As the Instructions for CJA Form 20 specify, "[a]ll payments made pursuant to this claim are subject to post-audit....Any overpayments are subject to collection, including deduction of amounts due from future vouchers." Based on the records now provided to the Court, the Court determines that the total amount of reasonable compensation for his services is $26,650, meaning Mr. Falk has received an overpayment of $30,976.60.

Although the Court is denying Mr. Falk's pending vouchers, the Court recognizes that Mr. Falk is entitled to payment for the legitimate costs he incurred during the representation of Mr. Hagan. The pending amount of authorized costs is $752.89. The Court orders that these costs be offset against the overpayment and order that the remaining overpayment of $30,223.71 be deducted and recouped from any pending and future CJA vouchers submitted by Mr. Falk on any cases within this district.

IT IS SO ORDERED this 3rd day of May, 2010 at Wichita, Kansas.


s/ Wesley E. Brown
U.S. Senior District Judge